United States District Court
for the
District of Massachusetts
1:24-cv-12785

---

Patricia Harris,
Personal Representative of the Estate of Bruce Enos,

Plaintiff,

-vs-

Town of Falmouth,
Falmouth Police Department Officers Newton Cardoso and Joshua Oliver and Sergeant Elvira Ferrer,

Defendants.

---

**COMPLAINT AND DEMAND FOR JURY TRIAL**

1. No one was more committed and loyal to his family and community than Bruce Enos.

2. He was born and raised in Falmouth, Massachusetts. He had graduated from Falmouth High School, attended and successfully completed 2- and 4-year degrees at public, Massachusetts institutions of higher learning, and returned home to work in the family business alongside his father, brother, and the rest of his family.

3. At 30 years old on November 5, 2021, he was preparing for and looking forward to the holidays, during which he would spend time with his family in the community he cherished.

4. Because of Defendants, however, Mr. Enos never enjoyed the holidays with his family.

5. After he was attacked by another individual—and while Mr. Enos was defending himself—Defendant-Officer Newton Cardoso arrived and, without warning, discharged his taser into Mr. Enos.

6. Mr. Enos immediately screamed in pain and began exhibiting textbook signs and symptoms of cardiac arrhythmia and arrest: he was short of breath, sweating profusely, and fatigued.

7. Defendant-Officer Newton Cardoso observed those signs and symptoms and did nothing.

8. Defendant-Officer Joshua Oliver also observed those signs and symptoms as he transported Mr. Enos approximately 1 mile to the Falmouth Police Station.

9. He also did nothing.

10. Shortly after entering the Falmouth Police Station, Mr. Enos collapsed, unresponsive and lifeless, in Defendants' presence.

11. Minutes passed before Defendants checked whether Mr. Enos was breathing or had a pulse.

12. More minutes passed before they began any attempt at reviving Mr. Enos.

13. Nearly 20 minutes after he collapsed, Mr. Enos was placed on a stretcher, transferred into an ambulance, and transported to Falmouth Hospital, where he was pronounced dead.

14. But Mr. Enos had not died at Falmouth Hospital; he had died at the Falmouth Police Station.

15. Defendants knew he had died at the Falmouth Police Station.

16. They knew they had killed him.

17. And they immediately began covering it up.

18. Ms. Harris now brings this complaint and demand for a jury trial to do what her son cannot: hold Defendants responsible by vindicating his rights as guaranteed under the Constitution of the United States, the Massachusetts Declaration of Rights, and the laws of both the United States and the Commonwealth of Massachusetts.

**Jurisdiction and Venue**

19. This Court has subject matter jurisdiction over all claims in this action pursuant to 28 U.S.C. §§ 1331, 1343, and 1367.

20. This Court is the proper venue for this action pursuant to 28 U.S.C. § 1391.

**Parties**

21. Ms. Harris is a resident of the Commonwealth of Massachusetts and the Personal Representative of the Estate of Bruce Enos.

22. The Town of Falmouth is a municipality located within Barnstable County in the Commonwealth of Massachusetts.

23. Falmouth Police Department ("FPD") Officers Newton Cardoso and Joshua Oliver and Sergeant Elvira Ferrer are law enforcement officers employed by FPD. They acted at all relevant times as on-duty FPD law enforcement officers. They are sued in their individual and personal capacity. When necessary, Defendants Cardoso, Oliver, and Ferrer are referred to as the "LEO Defendants."

**Facts Alleged**

**I.      Defendant-Officer Newton Cardoso uses a taser on Bruce Enos without warning**

24. At approximately 12:15 a.m. on Friday, November 5, 2021, Bruce Enos was just outside of Añejo Mexican Bistro, located at 188 Main Street in Falmouth, Massachusetts.

25. An individual named Jarrod Scott-Reynolds had attacked, and was attacking, Mr. Enos. Mr. Enos was in the process of defending himself. Several witnesses saw Mr. Enos defending himself from Mr. Scott-Reynolds's attack.

26. Around the same time, Defendant-Officer Newton Cardoso arrived via his FPD police cruiser at the same location.

27. He exited the vehicle, drew his taser, and, without warning, discharged it toward Mr. Enos.

28. Several witnesses observed Defendant-Officer Newton Cardoso discharge his taser without any verbal or other warning to Mr. Enos or anyone else present.

29. At least one of the taser's barbs made contact with Mr. Enos.

30. Defendant-Officer Newton Cardoso then sent approximately 1,000 volts of electricity through Mr. Enos's body.

31. Immediately after Defendant-Officer Newton Cardoso sent the electricity through Mr. Enos's body, Mr. Enos screamed in pain.

32. The electricity caused Mr. Enos's heart to enter an abnormal heart rhythm—an arrythmia.

**II.    Defendant-Officer Newton Cardoso's taser causes Bruce Enos to enter cardiac arrest**

33. Immediately after Defendant-Officer Newton Cardoso electrocuted Mr. Enos and Mr. Enos screamed in pain, he began exhibiting textbook symptoms of cardiac arrhythmia and arrest. He was short of breath, sweating profusely, and fatigued. Defendant-Officer Newton Cardoso observed that Mr. Enos was breathing heavily, sweating profusely, and fatigued. But he did not begin providing any medical care to Mr. Enos, didn't transport him to a hospital, and didn't summon paramedics.

34. Instead, he handcuffed Mr. Enos. Defendant-Officer Joshua Oliver then escorted Mr. Enos to his FPD police cruiser, placed him in the back of the cruiser, and transported Mr. Enos to the Falmouth Police Station, which is located at 750 Main Street in Falmouth, Massachusetts.

35. Añejo Mexican Bistro and the Falmouth Police Station are located on the same street in Falmouth, Massachusetts—Main Street—and are less than one mile apart.

36. It took Defendant-Officer Joshua Oliver a few minutes to transport Mr. Enos to the Falmouth Police Station.

37. During the short drive, Defendant-Officer Joshua Oliver observed Mr. Enos continuing to exhibit textbook symptoms of cardiac arrhythmia and arrest. He was short of breath, sweating profusely, and fatigued. Defendant-Officer Joshua Oliver observed that Mr. Enos was breathing heavily, sweating profusely, and fatigued. But he did not begin providing any medical care to Mr. Enos, didn't transport him to a hospital, and didn't summon paramedics.

**III.    Bruce Enos collapses and dies at the Falmouth Police Station**

38. Instead, Defendant-Officer Joshua Oliver continued driving to the Falmouth Police Station. He parked his police cruiser in the sallyport of the Falmouth Police Station, retrieved Mr. Enos from the back seat of his cruiser, and escorted Mr. Enos into the Falmouth Police Station.

39. All the while, Mr. Enos continued to exhibit textbook symptoms of cardiac arrhythmia and arrest. He was short of breath, sweating profusely, and fatigued. Defendant-Officer Joshua Oliver observed that Mr. Enos was breathing heavily, sweating profusely, and fatigued. But he did not begin providing any medical care to Mr. Enos, didn't transport him to a hospital, and didn't summon paramedics.

40. Defendant-Officer Joshua Oliver instead escorted Mr. Enos approximately 30 feet into Falmouth Police Station and stood next to him just outside of an interrogation room within the Station. Defendant-Sergeant Elvira Ferrer approached Defendant-Officer Joshua Oliver and Mr. Enos to assist with the booking process.

41. Suddenly, Mr. Enos collapsed. His head pitched backward. His eyes rolled into the back of his head.

42. Mr. Enos had just exhibited more textbook—and life-threatening—symptoms of cardiac arrest: sudden loss of consciousness and collapse and no response to shouting or shaking.

43. Defendant-Officer Joshua Oliver and Defendant-Sergeant Elvira Ferrer observed that Mr. Enos had been breathing heavily, sweating profusely, and fatigued. They observed him collapse, lose consciousness, and become unresponsive. But they did not begin providing any medical care to Mr. Enos, didn't transport him to a hospital, and didn't summon paramedics. They didn't check to ensure he was breathing or that he had a pulse, both required, rudimentary interventions when a person collapses.

44. Instead, Defendants Oliver and Cardoso—the latter of whom had come over to assist after Mr. Enos collapsed—picked up Mr. Enos's lifeless body and placed it on a padded chair in the interrogation room.

45. Mr. Enos was still unresponsive.

46. Precious seconds ticked by as Mr. Enos's blood was no longer carrying oxygen to his brain and other vital organs.

47. But there he sat, lifeless and motionless.

48. The Defendants milled around Mr. Enos for 100 seconds—1 minute and 40 seconds—before Defendant-Officer Newton Cardoso unlocked his handcuffs. They still had not checked Mr. Enos for a pulse or to see if he was breathing.

49. Finally, a full 2 minutes after he collapsed, Defendant-Officer Joshua Oliver checked to see if Mr. Enos was either responsive or breathing. He was neither.

50. Another 44 seconds passed before Defendant-Sergeant Elvira Ferrer began cardiopulmonary resuscitation, better known as CPR, on Mr. Enos.

51. In total, 164 seconds—2 minutes and 44 seconds—passed from the time Mr. Enos exhibited multiple, textbook signs of cardiac arrhythmia and arrest until Defendants began CPR.

52. Yet another significant chunk of time—on this occasion, 1 minute and 38 seconds—passed between when Defendant-Sergeant Elvira Ferrer began CPR on Mr. Enos and when she applied an automated external defibrillator, better known as an AED, to Mr. Enos. The AED was located within the Falmouth Police Station.

53. After several failed attempts at using the AED to resuscitate Mr. Enos—and after stopping and starting CPR multiple times—paramedics arrived in the interrogation room 6 minutes after Mr. Enos collapsed.

54. The Falmouth Fire Rescue Department is located at 399 Main Street in Falmouth, Massachusetts, approximately half a mile from the Falmouth Police Station.

55. Mr. Enos's lifeless body was eventually placed on a stretcher and wheeled out of the Falmouth Police Station a full 18 minutes after he collapsed.

56. He had died in the Falmouth Police Station.

57. But Defendants had already begun covering up that fact.

**IV.   Defendants' consciousness of guilt**

58. To avoid liability for Mr. Enos's death, Defendants, knowing Mr. Enos had died when he collapsed or shortly after, had him transported to Falmouth Hospital to avoid a medical professional declaring Mr. Enos dead at the Falmouth Police Station.

59. Two friends of Mr. Enos traveled to the Falmouth Police Station after they saw him handcuffed and transported by Defendant-Officer Joshua Oliver to the Falmouth Police Station.

60. They arrived and offered to provide transportation to Mr. Enos when he was released.

61. A lieutenant with the Falmouth Police Station told them Mr. Enos had experienced a medical event and that the friends should neither go to the hospital nor tell Mr. Enos's family about the medical event.

62. A short time later, the friends appeared at the home of Mr. Enos's parents, distraught.

63. They informed Ms. Harris and Mr. Enos's father that something was wrong with Mr. Enos.

64. Concerned, Mr. Enos's father and brother quickly traveled to the Falmouth Police Station to gather information on Mr. Enos's condition.

65. They were told by another FPD lieutenant that Mr. Enos experienced a medical event after he had denied medical care.

66. Mr. Enos's family was never informed by Defendants or FPD that anything had happened to their son and brother. All information they received was from Mr. Enos's friends and employees of Falmouth Hospital.

67. Defendants and FPD did not provide information to Mr. Enos's family because they knew they had killed Mr. Enos and inexplicably declined to provide timely, basic, life-saving care to him.

### Count 1
### Common law wrongful death against all Defendants

68. Ms. Harris incorporates by reference all prior paragraphs.

69. Defendants owed a duty of care to Mr. Enos.

70. Specifically, once Defendants intended to take and took Mr. Enos into custody, they owed a duty of care to Mr. Enos such that they were required to prevent Mr. Enos from experiencing serious bodily harm or death because of their custody and actions and to rescue him once he faced serious bodily harm or death because of their custody and actions.

71. Defendants breached that duty.

72. Mr. Enos died because of Defendants' breach of duty.

## Count 2
**Negligent wrongful death under G.L. c. 229, § 2(1), against the City of Lowell**

73. Ms. Harris incorporates by reference all prior paragraphs.

74. Defendants owed a duty of care to Mr. Enos.

75. Specifically, once Defendants intended to take and took Mr. Enos into custody, they owed a duty of care to Mr. Enos such that they were required to prevent Mr. Enos from experiencing serious bodily harm or death because of their custody and actions and to rescue him once he faced serious bodily harm or death because of their custody and actions.

76. Defendants breached that duty.

77. Mr. Enos died because of Defendants' breach of duty.

## Count 3
**Willful, wanton, or reckless wrongful death under G.L. c. 229, § 2(2), against all Defendants**

78. Ms. Harris incorporates by reference all prior paragraphs.

79. Defendants owed a duty of care to Mr. Enos.

80. Specifically, once Defendants intended to take and took Mr. Enos into custody, they owed a duty of care to Mr. Enos such that they were required to prevent Mr. Enos from experiencing serious bodily harm or death because of their custody and actions and to rescue him once he faced serious bodily harm or death because of their custody and actions.

81. Defendants breached that duty and did so in a willful, wanton, or reckless manner.

82. Mr. Enos died because of Defendants' breach of duty.

## Count 4
**Loss of consortium under under G.L. c. 231, § 85X, against all Defendants**

83. Ms. Harris incorporates by reference all prior paragraphs.

84. Ms. Harris is the parent of Mr. Enos.

85. At the time of his death, Mr. Enos was dependent on Ms. Harris for support.

86. Defendants seriously injured Mr. Enos.

87. Defendants are legally responsible for seriously injuring Mr. Enos.

### Count 5
### Pain and suffering under under G.L. c. 229, § 6, against all Defendants

88. Ms. Harris incorporates by reference all prior paragraphs.

89. Defendants owed a duty of care to Mr. Enos.

90. Specifically, once Defendants intended to take and took Mr. Enos into custody, they owed a duty of care to Mr. Enos such that they were required to prevent Mr. Enos from experiencing serious bodily harm or death because of their custody and actions and to rescue him once he faced serious bodily harm or death because of their custody and actions.

91. Defendants breached that duty.

92. Mr. Enos died because of Defendants' breach of duty.

93. Immediately preceding his death, Mr. Enos endured conscious pain and suffering because of Defendants' breach of duty.

### Count 6
### Intentional or reckless infliction of emotional distress against the LEO Defendants

94. Ms. Harris incorporates by reference all prior paragraphs.

95. The LEO Defendants intended to inflict emotional distress on Mr. Enos and Ms. Harris or knew or should have known that emotional distress was likely to result.

96. The LEO Defendants' conduct was extreme and outrageous, beyond all possible bounds of decency and utterly intolerable in a civilized society.

97. The LEO Defendants caused Mr. Enos's and Ms. Harris's emotional distress.

98. Mr. Enos and Ms. Harris suffered severe emotional distress of a nature that no reasonable person could be expected to endure it.

99. Specifically, in the three (3) years since Mr. Enos's death, Ms. Harris has endured daily, intense physical and emotional pain because of her the loss of her son. Trauma resulting from her son's death combined with the daily physical and emotional pain has negatively affected Ms. Harris's physical and mental health and resulted in intense pain suffering. She has endured intense anxiety, depression, stress, and physical and emotional pain. She has had difficulty sleeping, eating, working, and socializing.

**Count 7**
**Negligent infliction of emotional distress against the Town of Falmouth**

100.    Ms. Harris incorporates by reference all prior paragraphs.

101.    Defendants owed a duty of care to Mr. Enos.

102.    Defendants breached that duty.

103.    Mr. Enos died because of Defendants' breach of duty.

104.    Defendants' breach of duty caused Mr. Enos emotional distress.

105.    Defendants' breach of duty and Mr. Enos's resulting death has caused Ms. Harris emotional distress.

106.    Mr. Enos and Ms. Harris's emotional distress caused them to suffer physical harm.

107.    Specifically, in the three (3) years since Mr. Enos's death, Ms. Harris has endured daily, intense physical and emotional pain because of her the loss of her son. Trauma resulting from her son's death combined with the daily physical and emotional pain has negatively affected Ms. Harris's physical and mental health and resulted in intense pain suffering. She has endured intense anxiety, depression, stress, and physical and emotional pain. She has had difficulty sleeping, eating, working, and socializing.

108.    A reasonable person in Mr. Enos and Ms. Harris's position would also have experienced emotional distress.

## Count 8
### Negligence against the Town of Falmouth

109.    Ms. Harris incorporates by reference all prior paragraphs.

110.    Defendants owed a duty of care to Mr. Enos.

111.    Specifically, once Defendants intended to take and took Mr. Enos into custody, they owed a duty of care to Mr. Enos such that they were required to prevent Mr. Enos from experiencing serious bodily harm or death because of their custody and actions and to rescue him once he faced serious bodily harm or death because of their custody and actions.

112.    Defendants breached that duty.

113.    Mr. Enos was harmed because of Defendants' breach of duty.

## Count 9
### Gross negligence against all Defendants

114.    Ms. Harris incorporates by reference all prior paragraphs.

115.    Defendants owed a duty of care to Mr. Enos.

116.    Specifically, once Defendants intended to take and took Mr. Enos into custody, they owed a duty of care to Mr. Enos such that they were required to prevent Mr. Enos from experiencing serious bodily harm or death because of their custody and actions and to rescue him once he faced serious bodily harm or death because of their custody and actions.

117.    Defendants breached that duty in a willful, wanton, reckless, or grossly negligent manner.

118.    Mr. Enos was harmed because of Defendants' breach of duty.

## Count 10
### Deliberate indifference under 42 U.S.C. § 1983 against all Defendants

119.    Ms. Harris incorporates by reference all prior paragraphs.

120.    Defendants had knowledge of facts from which they were able to draw the inference that a substantial risk of serious harm existed.

121.    Despite that knowledge, Defendants did not act to alleviate the substantial risk of serious harm.

122.    Both Mr. Enos and Ms. Harris were subjected to serious harm as a result.

## Count 11
### Coercive common law conspiracy against all Defendants

123.    Ms. Harris incorporates by reference all prior paragraphs.

124.    Defendants acted in unison with a peculiar power of coercion over Mr. Enos and Ms. Harris which they would not have had if they were acting individually.

## Count 12
### Joint liability common law conspiracy against all Defendants

125.    Ms. Harris incorporates by reference all prior paragraphs.

126.    Two or more of the Defendants engaged in a common design or agreement, express or otherwise, to commit a wrongful act.

127.    One or more of the Defendants committed a tortious act in furtherance of the common design or agreement.

## Count 13
### *Monell* claim against the Town of Falmouth for an official policy or custom

128.    Ms. Harris incorporates by reference all prior paragraphs.

129.    The Town of Falmouth has official policies or customs in place.

130.     Specifically, on November 5, 2021, the Town of Falmouth had in place an official policy or custom which allowed FPD law enforcement officers to deploy a taser without warning.

131.     The LEO were aware of the Town of Falmouth's official policy and custom allowing FPD law enforcement officers to deploy a taser without warning.

132.     After Defendants killed Mr. Enos on November 5, 2021, the LEO Defendants directly stated they acted according to the Town of Falmouth's official policy and custom of deploying a taser without warning.

133.     The policies or customs amounted to deliberate indifference to the rights of the persons with whom the LEO Defendants came into contact.

134.     The LEO Defendants acted pursuant to these official policies or customs.

135.     Mr. Enos was harmed and deprived of his constitutional rights as a result.

### Count 14
*Monell* **claim against the Town of Falmouth for failure to train or supervise**

136.     Ms. Harris incorporates by reference all prior paragraphs.

137.     The Town of Falmouth both failed to properly train and/or supervise the Defendants.

138.     Specifically, the Town of Falmouth did not properly train and/or supervise the LEO Defendants in the use of tasers, the recognition medical emergencies, the administration of first aid, and the timely administration of CPR and use of an AED.

139.     The failure to properly train and/or supervise amounted to deliberate indifference to the rights of the persons with whom the LEO Defendants came into contact.

140.     The LEO Defendants acted without proper training and/or supervision.

141.     Mr. Enos was harmed and deprived of his constitutional rights as a result.

- 14 -

## Count 15
### Failure to train or supervise against the Town of Falmouth under G.L. c. 258, § 2

142.    Ms. Harris incorporates by reference all prior paragraphs.

143.    The Town of Falmouth both failed to properly train and/or supervise the Defendants.

144.    Specifically, the Town of Falmouth did not properly train and/or supervise the LEO Defendants in the use of tasers, the recognition medical emergencies, the administration of first aid, and the timely administration of CPR and use of an AED.

145.    The failure to properly train and/or supervise amounted to deliberate indifference to the rights of the persons with whom the LEO Defendants came into contact.

146.    The LEO Defendants acted without proper training and/or supervision.

147.    Mr. Enos was harmed and deprived of his constitutional rights as a result.

## Count 16
### Excessive force under 42 U.S.C. § 1983 against Defendant-Officer Newton Cardoso

148.    Ms. Harris incorporates by reference all prior paragraphs.

149.    During all events described in the early morning of November 5, 2021, Defendant-Officer Newton Cardoso was acting under color of state law as an on-duty FPD police officer.

150.    Defendant-Officer Newton Cardoso used force on Mr. Enos which was unreasonable under all the circumstances.

151.    As a result of Defendant-Officer Newton Cardoso's use of excessive force, Mr. Enos was denied his rights as guaranteed under the Fourth Amendment to the Constitution of the United States.

## Count 17
### Excessive force under G.L. c. 12, § 11I, against Defendant-Officer Newton Cardoso

152.     Ms. Harris incorporates by reference all prior paragraphs.

153.     During all events described in the early morning of November 5, 2021, Defendant-Officer Newton Cardoso was acting under color of state law as an on-duty FPD police officer.

154.     Defendant-Officer Newton Cardoso used force on Mr. Enos which was unreasonable under all the circumstances.

155.     Consequently, Defendant-Officer Newton Cardoso interfered with or attempted to interfere with Mr. Enos's exercise and enjoyment of rights as guaranteed under the Constitution of the United States and the Constitution of the Commonwealth of Massachusetts.

## Count 18
### Assault and battery against Defendant-Officer Newton Cardoso

156.     Ms. Harris incorporates by reference all prior paragraphs.

157.     Defendant-Officer Newton Cardoso intended to cause harmful or offensive contact with Mr. Enos.

158.     A harmful or offensive contact of Mr. Enos directly or indirectly resulted from Defendant-Officer Newton Cardoso's actions and intent.

159.     WHEREFORE, Ms. Harris respectfully requests the Court grant the following forms of relief:

a.  Enter judgment in favor of Ms. Harris and against the Defendants on all counts of the Complaint;

b.  Award compensatory and punitive damages in an amount determined by a jury;

c.  Award Ms. Harris attorneys' fees, costs, and interest as permitted by law; and

d.  Grant such further and other relief as may be just and proper.

**Demand for Jury Trial**

160.       Ms. Harris demands a trial by jury on all claims and issues.

Dated:  November 4, 2024
        Boston, Massachusetts

                                        Respectfully submitted,

                                        Joshua O'Neill, Esq.
                                        BBO# 704512
                                        617.356.7784
                                        josh@bostondefender.com

                                        The Boston Defender
                                        www.bostondefender.com
                                        100 Cambridge Street
                                        14th Floor
                                        Boston, MA 02114

- 17 -